IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **QUINTEN DAVIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs.   ) | Case No. 16−cv−0410−NJR |
| ) | |
| **KIMBERLY BUTLER,** ) | |
| **KENT BROOKMAN,** ) | |
| **MICHAEL KEYS,** ) | |
| **TRACY LEE,** ) | |
| **MICHAEL HOF,** ) | |
| **ZIEGLER,** ) | |
| **JACQUELINE LASHBROOK,** ) | |
| **B. WESTFALL,** ) | |
| **T. RUBACH,** ) | |
| **P.S.** ) | |
| **L. OAKLEY,** ) | |
| **BRAMLETT, and** ) | |
| **MONICA NIPPE,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Quinten Davis, an inmate in Western Illinois Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that happened at Menard Correctional Center ("Menard"). Plaintiff requests compensatory and punitive damages. This case is now before the Court for a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Amended Complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Amended Complaint

Plaintiff originally filed this action on April 12, 2016. (Doc. 1). That Complaint was stricken because a page was missing; it was later refiled. (see Docs. 5, 6). Before the Court could conduct a § 1915A review, Plaintiff moved to amend his Complaint twice. (Doc. 10) (Doc. 11). The Court granted Plaintiff's motions on May 12, 2016. (Doc. 13). The Amended Complaint was filed on May 12, 2016. (Doc. 14). The Court now reviews the Amended Complaint.

On March 2, 2015, a fight occurred on the Menard prison yard. (Doc. 14, p. 8). As a result of the fight, Plaintiff was placed on investigative status in segregation by Hof and Lee. (Doc. 14, p. 8). Lashbrook and Butler approved this placement. (Doc. 14, p. 9). Plaintiff alleges that no evidence linked him to the fight. (Doc. 14, p. 8). Plaintiff did not receive an investigative report, and he was in investigative segregation for thirty one days before he received a disciplinary report, which was signed by Hof. (Doc. 14, p. 9). Ziegler and Westfall also signed the ticket. (Doc. 14, p. 9).

Plaintiff alleges that Rubach, who presumably served the ticket, did not give Plaintiff a chance to sign it or allow him to request witnesses. (Doc. 14, p. 9). Plaintiff also alleges that when he originally saw the ticket, it was not signed by the hearing investigator. (Doc. 14, p. 18) He alleges that the original copy of the ticket was altered at a later time to reflect both the hearing investigator's signature and that Plaintiff refused to sign for the ticket. (Doc. 14, p. 9) (Doc. 14-1, p. 15). Plaintiff told the hearing committee that the ticket was deficient, but they ignored the errors. (Doc. 14, p. 12).

Plaintiff was charged with creating a dangerous disturbance, impeding an investigation, and fighting. (Doc. 14, p. 10). Part of the evidence that the committee relied on was a report that stated that the first time that Plaintiff was interviewed regarding the assault, he stated that he was lifting weights during the fight. (Doc. 14, p. 10). The second time Plaintiff was interviewed, he said that he was on the phone. (Doc. 14, p. 10). The ticket alleged that there was no record of Plaintiff being on the phone, but Plaintiff states that his own records show that he made a ten minute phone call to his brother on that day. (Doc. 14, p. 10) (Doc. 14, p. 22). Plaintiff alleges that inmate witnesses, Lumar Parish and Demetrius Jones, would have testified to his innocence.

(Doc. 14, p. 11). Plaintiff received one year segregation, one year revocation of good time credit (since restored), one year C-Grade, and one year commissary restriction. (Doc. 14, p. 10).

Plaintiff has suffered from anxiety, sleep deprivation, depression, emotional distress, mental breakdowns, and "instabilities," for which he takes psychotropic medications. (Doc. 14, p. 12). While in segregation, Plaintiff was exposed to loud noise, including banging and shouting. (Doc. 14, p. 12). He also suffered from loss of privileges, including fewer contact visits. (Doc. 14, p. 12). Plaintiff also was housed in a small cell that lacked adequate ventilation. (Doc. 14, p. 14). The heat was unbearable in the summer. (Doc. 14, p. 14). Plaintiff experienced breathing difficulties and other symptoms, including weight loss. (Doc. 14, p. 14). All told, Plaintiff spent 361 days in segregation before the Administrative Review Board reversed his discipline. (Doc. 14, p. 13).

After filing several grievances regarding the above issues, Plaintiff requested copies of his disciplinary ticket and adjustment committee summary final report from the records office. (Doc. 14, p. 15). The request was filed by a Record Office staff member, "P.S." (Doc. 14, p. 15). After receiving the records office copy, Plaintiff noticed that the disciplinary report had been altered in the manner discussed above. (Doc. 14, p. 15).

On June 15, 2015, Plaintiff filed a grievance to Bramlett and Nippe regarding the altered disciplinary report. (Doc. 14, p. 15). Neither Bramlett nor Nippe substantiated Plaintiff's grievance. (Doc. 14, p. 15). Grievance Officer Oakley denied ever receiving the June 15, 2015 grievance. (Doc. 14, p. 16). Plaintiff alleges that Bramlett, Nippe, Oakley, and P.S. were all "antipathetic" to Plaintiff's reports of misconduct, and that their apathy shows that they were in conspiracy against Plaintiff. (Doc. 14, p. 16).

**Discussion**

Based on the allegations of the Amended Complaint, the Court finds it convenient to divide the *pro se* action into four counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1:** **Plaintiff's Fourteenth Amendment Due Process rights were violated when he was improperly ticketed and disciplined for a fight that took place on March 2, 2015 by Hof, Ziegler, Westfall, Brookman, Keys, Butler, and Rubach;**
>
> **Count 2:** **Hof, Lee, Lashbrook, and Butler violated Plaintiff's Fourteenth Amendment Due Process rights when they placed him in investigative segregation for approximately one month without issuing a disciplinary report;**
>
> **Count 3:** **Bramlett, Nippe, Oakley, P.S., Butler, and Lashbrook individually and in conspiracy with the other Defendants failed to intervene to address the misconduct; and**
>
> **Count 4:** **Hof, Brookman, Keys, Butler, and Rubach conspired to retaliate against Plaintiff for refusing to cooperate in the investigation of the fight by issuing him a disciplinary ticket and finding him guilty.**

As to **Count 1**, when a plaintiff brings an action under Section 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure

prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* After *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how, after *Sandin*, it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In this case, Plaintiff was sent to disciplinary segregation for 361 days. While the length of time, standing alone, is insufficient to state a claim, a term of one year has previously been found to trigger due process protections. *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994), *cert denied*, 513 U.S. 999. Plaintiff also has alleged certain conditions, such as loud noise, poor ventilation, overly small cells, and excessive heat, which taken together, state a claim for a deprivation of a liberty interest. *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (noting that the inquiry into whether a prisoner was deprived of a liberty interest may consider the conditions and duration of segregation in combination).

Plaintiff also has made certain allegations, which if true, would suggest that his due process rights have been violated. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). Plaintiff has alleged both that he was not permitted to call witnesses, and that the Administrative Review Board eventually found that his conviction was not supported by the evidence. At this stage in the litigation, Plaintiff's claims for a due process violation related to his disciplinary hearing and ticket shall proceed.

But none of the other claims survives. **Count 2** must be dismissed because Plaintiff has no liberty interest in avoiding investigative segregation. Illinois statutes and correctional regulations do not place limitations on the discretion of prison officials to place inmates in administrative segregation, including investigative or temporary lockdown or confinement and involuntary protective custody; accordingly, there is no liberty interest implicated by an inmate's placement in these forms of segregation. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995); *Pardo v. Hosier*, 946 F.2d 1278, 1281-84 (7th Cir. 1991); *Kellas v. Lane*, 923 F.2d 492, 494-95 (7th Cir. 1991); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983). Therefore, **Count 2** is dismissed **with prejudice**.

**Count 3 also** must be dismissed. Plaintiff has attempted to state a claim against Defendants in **Count 3** based on their participation in the grievance process. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th

Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). While the Seventh Circuit has stated that a grievance may provide evidence of the requisite subjective mental state for a deliberate indifference claim, here, subjective knowledge of the situation is not an element of a due process claim. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). The receipt of grievances, therefore, does not suggest potential liability in cases that do not involve the deliberate indifference standard. Plaintiff does not have a claim against any Defendant for his due process claim where their only involvement was responding to grievances.

As to Defendant "P.S.," all Plaintiff has alleged is that this person responded to his record request. Plaintiff alleges that the document had been changed, but he does not allege that P.S. made the changes to the document, nor does he appear to have any reason to believe that P.S. made any changes to the document. There is no theory of recovery that supports a claim against an individual who responds to a document request by producing the document. P.S. is entitled to dismissal with prejudice.

The Amended Complaint also supports no conspiracy claim against Defendants. As an initial matter, it is doubtful whether a conspiracy claim can even be maintained in a Section 1983 action against defendants who are all state employees. *See Turley v. Rednour*, 729 F.3d 645, 649 n. 2 (7th Cir. 2013). Here, Plaintiff mentions a "conspiracy" in passing. This conclusory allegation is not supported by statements of fact. Claims of conspiracy require a factual foundation to survive preliminary review. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury

or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999)). Plaintiff has alleged that Defendants participated in the discipline and grievance processes, respectively. Plaintiff's only evidence of conspiracy is that he did not like the results of those processes, and thus Defendants must have conspired against him. That is too conclusory of an allegation; **Count 3** will be dismissed with prejudice.

**Count 4** also contains a conspiracy claim, but as Plaintiff has provided no more factual allegations as to that conspiracy as he did with the conspiracy in **Count 3**, to the extent that **Count 4** contains a conspiracy claim, it also will be dismissed. Taking **Count 4** as a straight retaliation claim, it also fails. To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take retaliatory action. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal citations omitted). The retaliatory act does not have to violate the Constitution; it is sufficient that the exercise of a prisoner's constitutional rights is a motivating factor. *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996).

Plaintiff has alleged that he was retaliated against for refusing to cooperate in an investigation. He has further alleged that according to Defendants, he was deemed to have refused to cooperate by telling two different stories regarding where he was during the fight.

Plaintiff's Amended Complaint, however, does not deny that he told internal affairs two different things. In fact, he continues to present both accounts. Plaintiff has submitted his phone records to show that he made a phone call on March 2, but also stated that no one has produced any evidence that he wasn't over at the weight pile. Based on this record, Plaintiff's speech was not entitled to First Amendment protections.

In order to determine whether speech constitutes protected First Amendment Activity, the Court employs the *Turner* test. In *Turner v. Safley*, the Supreme Court articulated the penological interest test: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The question is whether the speech at issue is consistent with legitimate penological objectives. *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009). Here, telling two stories to internal affairs regarding one's whereabouts during a security incident is not protected speech because permitting a prisoner to tell inconsistent stories during an investigation harms the legitimate penological objective of institutional safety and security. As Plaintiff's speech is not protected, he has no retaliation claim. **Count 4** will be **dismissed with prejudice**.

### Pending Motions

Plaintiff's Motions for Recruitment of Counsel will be referred to a Magistrate Judge for disposition. (Doc. 3) (Doc. 10). Plaintiff was granted leave to proceed IFP on April 20, 2016. (Doc. 7). Plaintiff's Motion to proceed IFP is **DENIED** as **MOOT**. (Doc. 9).

## Disposition

**IT IS HEREBY ORDERED** that Count 1 survives threshold review against Defendants Hof, Ziegler, Westfall, Brookman, Keys, Butler, and Rubach. **Counts 2-4** fail to state a claim upon which relief may be granted, and thus are **DISMISSED with prejudice**. Defendants Brookman, Lee, Lashbrook, P.S., Bramlett, Oakley, and Nippe are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants Hof, Ziegler, Westfall, Brookman, Keys, Butler, and Rubach: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure..

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document

submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 28, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**